UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INVEROM CORPORATION, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>DIGITEK S.p.A., an Italian corporation, and MTA S.p.A., an Italian corporation<br><br>Defendants. | Case No. 09-CV-3613<br>Honorable Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Defendants Digitek S.p.A. ("Digitek") and MTA, S.p.A. ("MTA") (together, "defendants'") have moved to dismiss plaintiff Inverom Corporation's ("Inverom's") amended complaint for lack of subject matter jurisdiction and for failure to join a necessary party. For the reasons set forth below, the motion is denied.

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(7) enables a defendant to seek dismissal of a complaint for failure to join a necessary party. Fed. R. Civ. P. 12(b)(7). "Dismissal, however, is not the preferred outcome under the Rules." *Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 634 (7th Cir. 2009). "Courts are 'reluctant to dismiss for failure to join where doing so deprives the plaintiff of his choice of federal forum.'" *Id.* (quoting *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001)).

Federal Rule of Civil Procedure 12(b)(1) enables a defendant to seek dismissal of a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "If subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule

1

12(b)(1) would be analyzed as any other motion to dismiss, by assuming for the purposes of the motion that the allegations in the complaint are true." *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003); *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (calling a motion to dismiss for lack of subject matter jurisdiction in which the court need only look to the complaint a "facial challenge"). However, "if the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd.*, 322 F.3d at 946; *Apex Digital, Inc.*, 572 F.3d at 444 (calling a motion to dismiss for lack of subject matter jurisdiction where the court has to look beyond the complaint "factual challenge"). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977)). In addition, once the movant proffers affidavits and other material that call a court's jurisdiction into question, "'[t]he presumption of correctness that [a court] accord[s] to a complaint's allegations falls away,'" *Apex Digital, Inc.*, 572 F.3d at 444 (quotation omitted), and "the court is free to weigh the evidence to determine whether jurisdiction has been established." *United Phosphorus, Ltd.*, 322 F.3d at 946 (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188 (7th Cir. 1993); *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922 (2d Cir. 1998); *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62 (3d Cir. 2000)).

In this case, for reasons explained more fully below, the complaint on its face adequately alleges a justiciable case or controversy; defendants, besides attaching some documents to its motion (the admissibility of which have not been established and the effect of which on this controversy is unclear), have not offered any affidavits or admissible evidence to support their

argument of lack of subject matter jurisdiction. While the burden of proof on this question is on the plaintiff, *id*., defendants have come forward with nothing which undermines the allegations of the complaint. Accordingly, at this point in the litigation, the court cannot treat this as a factual challenge to subject matter jurisdiction; instead, the court must assume the allegations of the complaint are true.

## II. BACKGROUND

### A. Allegations Relating to the Relationship of the Parties

Inverom alleges that it is a sales representative and consulting company that in 2007 was retained by an Italian company called Selcom Elettronica S.p.A. ("Selcom") (its Delaware subsidiary is Selcom Group) to perform services on behalf of Selcom's affiliate, Digitek. Specifically, Inverom was engaged to sell Digitek's electronic display equipment to manufacturers in cutting-edge automotive and heavy machinery applications. Selcom agreed to compensate Inverom with an annual fee, a discretionary bonus, certain expenses and, if the parties had not formed a joint venture or extended the Selcom-Inverom Agreement before it expired, a 2% commission based on manufacturing contracts won by Digitek as a result of Inverom's sales efforts. The 2% commissions were to come due as sales were made by Digitek over the life of its manufacturing contracts. Inverom worked diligently and successfully to secure contracts for Digitek.

Inverom alleges that on or about October 13, 2008, Selcom Group sent Inverom a letter attempting to terminate the Selcom-Inverom Agreement, but requested that Inverom continue to provide Selcom Group with consulting services. On October 14, 2008, Selcom Group sent a letter to Inverom informing Inverom of the sale of Digitek to MTA and requesting that, as of the date of the letter, Inverom no longer provide Selcom Group with consulting services with

reference to Digitek. "Selcom Group asserted in the [October 14, 2008] Letter that it would have no obligation to pay Inverom any commissions under the Selcom-Inverom Agreement for any contract procured by Inverom in favor of Digitek onward from October 14, 2008." (Am. Compl. ¶ 53.)

At or around this time, MTA, Digitek and Inverom commenced discussions about a new structure and compensation arrangement for Inverom's consulting services. Digitek and MTA encouraged Inverom to continue its work, which efforts resulted in long-term manufacturing contracts for Digitek.

On or around October 16, 2008, Inverom, MTA and Digitek discussed a new agreement for Inverom's services. Inverom's proposal envisioned commission payments to Inverom of 2% of monthly sales of products for companies introduced to Digitek by Inverom for the life of the contracts. On or about October 17, "one or more Digitek and/or MTA representatives contacted Inverom to request that Inverom continue providing consulting services to Digitek that it had previously provided to Selcom Group – with regard to Digitek – under the Selcom-Inverom agreement." (Am. Compl. ¶ 58.) Digitek and MTA requested that Inverom continue to work toward agreements with Fisker Automotive, Inc. ("Fisker Automotive") and Tesla Motors, Inc. ("Tesla Motors").

Roman Kuropas, Inverom's president, told Digitek/MTA that Inverom needed a six-month agreement. On or about October 22, 2008, MTA sent Inverom an agency agreement. (Am. Compl. Ex. G.) The proposed MTA agreement was to continue indefinitely until either party, by written notice, terminated the relationship, and the commission on most sales was to be 3%. Negotiations continued and Inverom's efforts on behalf of Digitek continued. Inverom ultimately agreed to at least some of MTA's terms. MTA reduced the terms it was offering.

On or about November 25, 2008, MTA declined in writing to engage in a relationship with Inverom. The declination letter, (Am. Compl. Ex. M,) states:

> Although there was no contractual relationship between Inverom and MTA, in recognition of certain interim efforts regarding the Fisker project that you may have undertaken from October 14, 2008 to November 16, 2008, MTA is willing to reimburse properly substantiated out-of-pocket expenses exclusively incurred in connection with said interim services during the stated time period and offer a flat fee of US$5,000.00. Payment of such amount(s) will be conditioned on i) execution of mutual releases; and ii) delivery to MTA representatives of all relevant business information relating to the Fisker project.

This offer was not accepted, and this suit was filed. For its amended complaint, Inverom seeks relief – including declaratory judgment – under the Illinois Sales Representative Act (Count I) and the common law theories of unjust enrichment (Count II) and quantum meruit (Count III).

**B.      Allegations Relating to Work Performed by Inverom on Behalf of Digitek**

Inverom alleges that in late 2007, and continuing through 2008, it introduced Digitek to Fisker Automotive, Inc. On or about September 19, 2008, Fisker Automotive awarded Digitek a Prototype Contract. The Digitek-produced instrument cluster then entered the development and tooling phase. On or about November 13, 2008, Digitek and Fisker entered into a letter of intent, looking toward finalization of a contract for the sale of Digitek product to Fisker. Plaintiff alleges that on information and belief, a final contract has been executed. Plaintiff alleges that based upon industry practice, it is entitled to a 5% commission for the life of the contract.

Inverom further alleges that it introduced Digitek to Case New Holland North America ("CNH") which led to several projects:

1.      *The Fred II project.* On or about May 15, 2008, CNH sent Digitek an award letter, pursuant to which Digitek, CNH, and Inverom worked together to plan production, which was expected to last for 8-10 years. However, Digitek balked at executing a Purchase Agreement on or about August 2008, because Digitek was in the process of being sold. On

information and belief, Inverom alleges that a Purchase Agreement for Fred II was executed in or around March 2009, which is expected to generate millions of dollars in revenue for 8-10 years.

2. *The Boomer 8N Retro Tractor Cluster Project*. CNH sent Digitek an award letter for this project on or about July 9, 2008. It is alleged on information and belief that Digitek has executed a Purchase Agreement with CNH for Boomer 8N.

3. *The Round Baler Operators Panel Project.* CNH sent Digitek an award letter for this project in July 2008. It is alleged on information and belief that a Purchase Agreement has been executed.

Inverom alleges that it introduced Digitek to Tesla Motors, Inc., which was developing the Tesla Model S, a high performance electric sedan. It is alleged on information and belief that in early 2009, based on Inverom's introduction of the companies, Tesla awarded Digitek a contract for the S Sedan.

### III. Analysis

Defendants have moved to dismiss Inverom's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(7), for failure to join a party pursuant to Rule 19 of the Federal Rules of Civil Procedure.

**A. Defendants' Motion to Dismiss for Failure to Join A Necessary Party**

Defendants argue that Inverom's amended complaint must be dismissed because Inverom failed to join Selcom as a party. However, Selcom was brought into this action by means of a Third Party Complaint by MTA in April 2010, approximately 30 days after this motion to dismiss was filed. Selcom has appeared and answered, so it would appear that the Rule 12(b)(7) portion of the motion to dismiss is moot. Inverom so argued in its response to the motion to

dismiss, and it does not appear that Digitek/MTA took issue with this argument. Accordingly, the motion to dismiss pursuant to Rule 12(b)(7) is denied as moot.[1]

B.   **Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction**

With respect to the motion's Rule 12(b)(1) argument, defendants maintain that the amended complaint does not allege an Article III case or controversy because plaintiff alleges only a hypothetical future violation of the Illinois Sales Representative Act. Similarly, defendants argue, Count II for unjust enrichment is unripe because "none of the referenced contracts that Plaintiff allegedly helped create during the forty-day negotiation period have resulted in sales and Plaintiff has not pleaded otherwise." (Mem. in Supp. of Mot. to Dismiss at 6.) Finally, defendants argue, Count III for quantum meruit is unripe insofar as it complains of defendants' failure to pay Inverom for services once MTA acquired Digitek since no money was due; further, insofar as it complains of a failure to compensate Inverom for conduct during its contract with Selcom, no quasi-contractual remedy is available.

As this court has previously explained:

> "Federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Wis. Envtl. Decade, Inc. v. State Bar of Wis.*, 747 F.2d 407, 410 (7th Cir. 1984). "The jurisdiction of such courts is accordingly limited to actual cases and controversies." *Id.* In order to determine whether there is an actual controversy between the parties, the court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (*quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)). "The difference between an abstract question calling for an advisory opinion and a ripe 'case or controversy' is one of degree, not discernible by any precise test." *Wis. Envtl. Decade*, 747 F.2d at 410.
>
> The Seventh Circuit's analysis in *Wisconsin Environmental Decade, Inc. v. State Bar of Wisconsin*, 141 F.2d 407 (1984), is instructive even though, unlike here, the Seventh Circuit was considering a request for a declaratory judgment that a

---

[1]   The court does not take any position on the claim that Selcom is a necessary party.

state law was unconstitutional. In *Wisconsin Environmental Decade*, a nonlawyer who had been advocating on behalf of his nonprofit before a legislative agency sought a declaratory judgment that he had a First Amendment right to do so without regard to Wisconsin rules prohibiting the unauthorized practice of law. *Id*. at 409. The Seventh Circuit held that a declaratory judgment was inappropriate because there was no actual controversy. *Id*. at 409. The Seventh Circuit reasoned that the nonlawyer was not in immediate danger of adverse legal consequences (although the State Bar had known of the nonlawyer's activities for over ten years, they had yet to take action), the threat of adverse legal action had not caused the nonlawyer to cease his advocacy, and it was uncertain that the Wisconsin Supreme Court would hold that the nonlawyer's activities actually constituted the unauthorized practice of law. *Id*. at 412-13.

*Tamburo v. Estate of Dworkin*, No. 04 C 3317, 2010 WL 5476780, at *2 (N.D. Ill. Dec. 29, 2010).

Defendants' ripeness arguments are not well taken, and their arguments that no money is owed, because no contracts have been executed, is contrary to the well-pleaded allegations of the complaint and therefore more properly raised in a motion for summary judgment. The plaintiff adequately alleges that MTA and Digitek have already reaped the benefits of Inverom's actions (even though the allegations about purchase contracts actually having been entered are based on information and belief). If, in fact, those actions have not yielded benefits, the proper vehicle for bringing such facts to the court's attention is a motion for summary judgment, not briefs filed in support of a motion to dismiss, since such alleged facts are contrary to the allegations of the amended complaint.

Moreover, the amended complaint plainly alleges that, although Inverom's actions have caused many benefits to accrue to MTA, MTA has declined to enter into a contract with Inverom and offered Inverom only an inadequate one time payment, available only if Inverom would execute a release for the rest of its claims. (Am. Compl. ¶ 73.) Even assuming that no purchase contracts have actually been executed, and even assuming that no money is due to Inverom until a contract is executed (all of which is assumption at this point), Inverom's alleged activities on

8

Digitek's behalf coupled with MTA's refusal to agree to compensate Inverom alleges a real case or controversy between the parties. Either because of contracts which have been entered or unjust enrichment or common custom and dealing, MTA may already owe Digitek money. Moreover, since Inverom has already performed services it claims benefitted Digitek, it is entitled to know if – now or in the future – MTA owes it money. Given that it has already expended efforts on Digitek's behalf, and given that MTA/Digitek has allegedly refused to extend a reasonable offer of compensation, Inverom is entitled to know whether its efforts will be compensated. This is not a dispute of a hypothetical or abstract character but a concrete controversy, touching the legal relations of the parties whose interests are clearly adverse. *See generally Medimmune, Inc.*, 549 U.S. at 127; *Winsor v. Daumit*, 185 F.2d 41, 43 (7th Cir. 1950). Inverom has performed services. Defendants say they have no obligation to pay – now or in the future. While it is possible that some aspects of this controversy are not yet ripe (let us assume, for example, that after the sale to MTA, Digitek remained bound by a contract with Inverom, and under that contract, certain payments are not yet due), it appears far more likely than not, from the allegations of the amended complaint, that Inverom is in no contractual relationship with MTA/Digitek; in such a case, Inverom might well be entitled to compensation for services already performed. *See, e.g., JMR Sales, Inc. v. MMC Electronics Am., Inc*., No. 08 C 1642, 2002 WL 31269612, at *1 (N.D. Ill. Oct. 10, 2002) (for a quasi-contractual recovery, all plaintiff need show is that it performed a service to benefit the defendant, plaintiff did not perform the service gratuitously, defendant accepted the service, and no contract prescribing payment existed (quoting *Owen Wagener & Co. v. U.S. Bank*, 697 N.E.2d 902, 908 (Ill. App. Ct. 1998)).

Further, with respect to MTA/Digitek's argument that Inverom's dispute is with Selcom, it is not Inverom's theory that Selcom owes money which it refused to pay. It is that Inverom's

actions benefitted Digitek and MTA, and Digitek and MTA have refused to pay; under this theory, Inverom's remedy may be contractual (unlikely given the allegations of the amended complaint) or may be quasi-contractual. Only with discovery will it be possible to determine whether Inverom is entitled to a contractual remedy, a quasi-contractual remedy, or no remedy at all.

The parties' briefs are remarkably free of relevant law, perhaps because not much law has developed under the Illinois Sales Representative Act and perhaps because, without more knowledge about the purchase contract for Digitek between Selcom and MTA, Inverom cannot be sure whether contractual or quasi-contractual remedies are available to it. Defendants' contention that Inverom may have performed services for the benefit of Digitek but until some event occurs which has not yet occurred, Inverom is entitled to nothing, is not self-evident; rather, given the dearth of case law under the Illinois Sales Representatives Act (and the apparent dearth of case law addressing the situation where the principal has been sold while the agent is performing services for its benefit), this court may find itself having to make or extend Illinois law, something it is unwilling to do on an undeveloped factual record.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is denied.

ENTER:

                                      /s/
                              JOAN B. GOTTSCHALL
                              United States District Judge

DATED: March 29, 2011